**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SHERRY A. ROBINSON                              *

      Plaintiff,                                 *

      v.                                         *       Civil Action No. 8:21-cv-02112-PX

LLOYD J. AUSTIN III,                            *
Secretary of Defense
United States Department of Defense             *

      Defendant.                                 *
                                 ***

## MEMORANDUM OPINION

Pending in this employment discrimination case is Defendant's motion to dismiss or, in the alternative, for summary judgment. Finding no hearing necessary, *see* D. Md. Loc. R. 105.6, the Court GRANTS in part and DENIES in part the motion.

**I.      Background**

Since 2011, Plaintiff Sherry A. Robinson ("Robinson"), an African American woman, has worked for the United States Department of Defense ("the Government") at its installment in Fort Meade, Maryland. ECF No. 1 ¶ 26. She brings this action against Defendant Lloyd J. Austin, III in his official capacity as the Secretary of Defense.

During the relevant period, Robinson held the position of Program Analyst in the Defense Information Systems Agency ("DISA"). ECF No. 1 ¶ 41. The position was classified as a GS-11 per the Government's grading system used to determine salary and reflect the "difficulty, responsibility, and qualifications required" for her job.[1] *General Schedule Overview*, U.S. Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/pay-

---

[1] In the federal employment system, a GS-1 is the lowest level on the grade scale while a GS-15 is the highest. *General Schedule Overview*, U.S. Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/ (last visited May 4, 2022).

systems/general-schedule/ (last visited May 4, 2022); *see also* ECF No. 1 ¶ 41.  As a GS-11

Program Analyst, Robinson received positive performance evaluations and was assigned

additional duties in recognition of her strong work ethic.  *See* ECF No. 1 ¶¶ 29 & 32.  Yet

Robinson was never promoted to a grade higher than GS-11, while other colleagues—who were

white, male, or both—had received such grade increases.  *Id.* ¶¶ 34 & 35.  Additionally,

Robinson observed that other non-federal employees working as DISA contractors eventually

received more favorable offers to work full-time for the Government.  *Id.* ¶ 35.

Through discussions with a retired colleague, Robinson learned that she could request a

"desk audit" wherein DISA would reevaluate whether her GS-11 grade and job title were

commensurate with the duties she was actually performing.  ECF No. 1 ¶ 36.  Robinson had

hoped that a favorable desk audit would lead to an "accretion of duties promotion," to a higher

GS grade and a better pay.  *Id.* ¶ 40.  On February 25, 2019, Robinson contacted her first-level

supervisor, Sharon Hopkins, to begin the desk audit process.  *Id.*  As Robinson saw it, the desk

audit was the only path to align her GS grade with the work that she had long been performing.

*Id.* ¶ 41.

However, Hopkins urged her to reconsider the request.  ECF No. 1 ¶ 42.  Then, on

August 14, 2019, Robinson's second-level supervisor, Paul DeMennato, suspended the desk

audit altogether.  *See id.* ¶¶ 38, 43, 44.  According to DeMennato, the better course of action was

for Robinson to simply be "reclassified" into another GS-11 position that matched her duties.  *Id.*

¶ 45.  Without this initial step, DeMennato warned, a desk audit could cause her grade to be

reduced to as low as a GS-5.  *See* ECF No. 10-8 at 8.

To accomplish this reclassification, DeMennato "required" Robinson to apply through

USAJobs for the position of GS-11 Security Specialist.[2]  ECF No. 1 ¶ 45.  Robinson applied, and her position was eventually reclassified.  *See* ECF No. 10-8 at 8.  Nevertheless, Robinson found it odd that none of her colleagues had been made to apply for a job they were already doing. ECF No. 1 ¶ 47.

Although the ostensible objective of Robinson's reclassification was to clarify her job responsibilities, Robinson continued to be assigned work commensurate to positions with a higher GS grade.  For example, for three months, Robinson filled in and performed all the work of a GS-13 employee who was on medical leave.  ECF No. 1 ¶¶ 33, 48, 49.  Robinson received no GS scale adjustment or pay increase during that time.  ECF No. 1 ¶¶ 33 & 50.

Dissatisfied with her efforts to increase her GS grade, Robinson initiated contact with an equal employment opportunity ("EEO") counselor on November 20, 2019.  ECF No. 1 ¶ 18. Then, on January 2, 2020, she filed a formal EEO complaint against the Government, alleging that her failure to receive any such increase had been on account of gender and race discrimination and harassment.  ECF No. 1 ¶¶ 20 & 54.

Three weeks later, on January 21, 2020, DISA completed Robinson's desk audit, and as a result, reduced Robinson's position from a GS-11 Security Specialist to a GS-8 Security Assistant.  ECF No. 1 ¶ 55–56; ECF No. 10-9 at 3.  Despite this grade reduction, DISA informed Robinson that agency regulations required her pay to remain at the former rate, so long as she stayed in her current position.  *See* ECF 10-7 at 11.  Those same regulations allowed Robinson to retain her GS-11 grade for a period of two years.  *Id.* at 10.  Robinson unsuccessfully appealed the results of the desk audit.  *See* ECF No. 10-9.  At the same time, Robinson's workload

---

[2] Although the Complaint referred to this position as "Security Manager," the parties' subsequent briefing has indicated that the correct title for this position is "Security Specialist."  *Compare* ECF No. 1 ¶ 43 *with* ECF No. 10-1 at 9 n.3.  This distinction is immaterial for present purposes, and so the Court refers to the position as "Security Specialist."

increased substantially.  ECF No. 1 ¶ 60.

On May 22, 2021, Robinson received a final agency decision and right-to-sue letter from DISA's EEO office.  ECF 1 ¶ 23; *see also* ECF No. 10-8.  She filed suit in this Court on August 19, 2021, alleging discrimination, retaliation, and hostile work environment claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  ECF No. 1 ¶ 1.  The Government timely moved to dismiss the Complaint in its entirety or, alternatively, for the Court to grant summary judgment in its favor.  ECF No. 10.

## II.      Standard of Review

The Government styles its motion to dismiss as alternatively one for summary judgment, even though it has neither answered the Complaint nor engaged in formal discovery.  Robinson opposes the request to convert the motion to one for summary judgment, and she has filed an affidavit pursuant to Federal Rule of Civil Procedure 56(d) establishing the need for further discovery.  *See* Fed. R. Civ. P. 56(d); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d, 214, 244–45 (4th Cir. 2002).  The purpose of a Rule 56(d) affidavit is to "ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition."  *Harrods*, 302 F.3d at 244 (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)).  Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive."  *Id.* (quoting 10B Charles A. Wright et al, *Federal Practice & Procedure* § 2741, at 419 (3d ed. 1998)).

Robinson convincingly explains that the administrative record is thin on her supervisors' reasons for their actions.  *See* ECF No. 13-2.  The record includes only short, written affidavits

4

that lack detail on the decisions made in connection with Robinson's reclassification, delay in desk audit, and reduction in GS grade. *Id.* Accordingly, to the extent the claims survive as a matter of law, Robinson has convinced the Court that formal discovery is warranted. *See Miller v. BrightKey, Inc.*, No. JKB-21-0995, 2021 WL 3129635, at *4 (D. Md. July 22, 2021). The Court will treat the motion as one to dismiss the claims under Rule 12(b)(6).

A motion to dismiss tests the legal sufficiency of the Complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In reviewing the motion, the Court "accept[s] the factual allegations of the complaint as true and construe[s] them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). The Court must next discern whether the Complaint includes sufficient facts which, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). With this standard in mind, the Court turns to the sufficiency of Robinson's claims.

### III.    Title VII – Disparate Treatment (Counts I & II)

Title VII renders it unlawful for an employer to discriminate against "any individual with respect to [her] compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Absent direct evidence of discrimination, the Court applies the burden shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To make the *prima facie* showing, a plaintiff must demonstrate (1) her membership in a protected class; (2) her satisfactory job

performance; (3) that she experienced an adverse employment action; and (4) that she was treated differently than similarly situated employees outside the protected class. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Once the plaintiff makes the *prima facie* showing, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016); *see also Moore v. Mukasey*, 305 F. App'x. 111, 115 (4th Cir. 2008) (unpublished opinion). If the defendant offers such a reason, the burden then shifts back to the plaintiff to raise a genuine dispute as to whether the defendant's proffered reason is mere pretext for discrimination. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001). Robinson pursues her claims under the *McDonnell Douglas* framework.

The Government advances two theories for why Robinson's disparate treatment claims must be dismissed, taking aim at the purported failure to allege a *prima face* case of discrimination. First, the Government argues that the Complaint fails to identify any adverse employment action that Robinson suffered. ECF No. 10-1 at 2. Second, the Government contends that the claims fail because Robinson has not identified any "comparators," or similarly situated employees outside the protected class, who were not subject to the same alleged discriminatory treatment. *Id.* The Court addresses each separately.

### A. Adverse Employment Action

Essential to any discrimination claim is that the plaintiff suffered a legally sufficient adverse employment action. *Harris v. Esper*, No. JKB-18-3562, 2019 WL 5423768, at *5 (D. Md. Oct. 23, 2019); *see also Derricott v. Target Corp.*, No. DKC 07-0506, 2008 WL 11509722, at *5 (D. Md. Feb. 4, 2008) ("Any discrimination claim must be premised upon an adverse employment action."). For an action to be sufficiently "adverse," it must be more than a "trivial

discomfort[] endemic to employment." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). Instead, it must negatively affect the "terms, conditions, or benefits" of employment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001)). Stated otherwise, a sufficiently adverse action ordinarily involves a "tangible" harm, such as "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone*, 178 F.3d at 255. By contrast, negative performance reviews, exclusion from "important meetings," and minor changes in job responsibilities typically are not actionable. *See James*, 368 F.3d at 376–77.

Here, Robinson identifies four purported adverse actions: (1) DeMennato's "requiring" Robinson to apply for the GS-11 Security Specialist position, even though she was performing the same duties as a GS-11 Program Analyst; (2) Robinson's reclassification from a GS-11 Program Analyst to a GS-11 Security Specialist; (3) the Government's delay in completing Robinson's desk audit; and (4) the reclassification of Robinson's position from a GS-11 Security Specialist to a GS-8 Security Assistant. Accepting as true that her employer had engaged in the described conduct, only the last is sufficiently adverse to support her disparate treatment claims.

As to the first two actions regarding reclassification to a GS-11 Security Specialist, the Complaint avers merely that DeMennato told Robinson if she were reclassified, she would be a more attractive candidate for promotion. *See* ECF No. 1 ¶ 45 (DeMennato explaining that applying for the Security Specialist position was part of the "path forward"). Further, even if DeMennato "ordered" Robinson to apply for this position, no facts make plausible that this harmed her in any way. The new position did not carry any less prestige, and it did not result in reduction in pay or otherwise alter the "terms, conditions, or benefits" of her employment.

*Thompson*, 312 F.3d at 651 (quoting *Von Gunten*, 243 F.3d at 866).  Nor does Robinson allege

that refusing to apply would have resulted in any adverse action.  Robinson's companion

argument that she "was deceived . . . [into thinking] that the reassignment would assist her in

achieving her desired promotion" similarly misses the mark.  *See* ECF No. 13-1 at 15.  Critically,

Robinson does not allege that she was placed in a comparatively *worse* position because of her

reclassification.

Rather, Robinson's main gripe is that in either GS-11 position, she performed at a level

commensurate with a GS-13 position.  *See, e.g.*, ECF No. 1 ¶¶ 34, 50, 51.  But even if true,

Robinson was already in a GS-11 position as a Program Analyst.  Her reclassification to another

GS-11 position visited no harm.  Thus, the Court cannot conclude that this reclassification

process constitutes an adverse employment action.

Likewise, the third purported action—delay of Robinson's requested desk audit—fails for

similar reasons.  Nothing in the Complaint identifies how the delay alone affected the "terms,

conditions, or benefits" of her employment.  *Thompson*, 312 F.3d at 651 (quoting *Von Gunten*,

243 F.3d at 866).  While Robinson waited for the audit, she continued to perform the same job

with her benefits unchanged.  Moreover, the desk audit itself is simply a review of an employee's

job classification based on the employee's actual duties and responsibilities.  ECF No. 1 at 6 n.1.

Thus, although an audit *could* result in an accretion of duties promotion and pay increase, that

outcome is far from guaranteed.  Any such hoped-for outcome is simply too speculative to

conclude that a delay of the process constitutes an adverse employment action.  *See Dollis v.*

*Rubin*, 77 F.3d 777, 782 (5th Cir. 1995) ("[T]he denial of a desk audit is not the type of ultimate

employment decision that Title VII was intended to address."); *accord Brookens v. Solis*, 616 F.

Supp. 2d 81, 91 (D.D.C. 2009), *aff'd*, No. 09-5249, 2009 WL 5125192 (D.C. Cir. Dec. 9, 2009)

("[P]laintiff's claims as to the denial of desk audits . . . do not constitute adverse employment actions . . . ."). Thus, the Court concludes that these alleged actions are not sufficiently adverse to sustain Robinson's claims.[3]

The Government's reduction of Robinson's GS grade is a different matter. Clearly this affected Robinson's job title and opportunities for promotion. *See Barrett v. Bio-Med. Applications of Maryland, Inc.*, No. ELH-11-2835, 2013 WL 1183363, at *18 (D. Md. Mar. 19, 2013) (conduct constitutes adverse employment action when it has a tangible effect on employment conditions). Indeed, the Government concedes as much, describing how Robinson was "downgraded" to the position of GS-8 Security Assistant. ECF No. 10-9 at 3. And contrary to the Government's contention, the two-year delay in the downward adjustment of Robinson's GS grade does not eliminate the adverse outcome so much as defers it. ECF No. 10-1 at 14. In this respect, the harm occurs the moment that "the employer's decision is made," even if the impact of the decision is pending. *Cf. Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980). When viewing these facts as true and most favorably to Robinson, the reduction from a GS-11 to GS-8 position constitutes a legally sufficient adverse employment action.[4]

---

[3] This is not to say that these facts are irrelevant to Robinson's case. Robinson could rely on the delay in the desk audit as circumstantial evidence contributing to an inference of discrimination as to her demotion. Robinson seems to acknowledge as much, emphasizing that the delayed desk audit is "collateral" to the real nub of her Complaint—namely, that she was demoted from a GS-11 Security Analyst to a to a GS-8 Security Specialist. *See* ECF No. 13-1 at 9.

[4] The Government also argues that Robinson failed to "exhaust" administrative remedies as to certain purported adverse actions, and thus this Court lacks jurisdiction to proceed on the claims. Contrary to the Government's views, exhaustion is decidedly *not* jurisdictional. *Compare* ECF No. 10-1 at 5 *with Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("Title VII's charge-filing instruction is not jurisdictional."). Nor does this exhaustion argument matter in the end. The Court has concluded that the reduction in GS grade constitutes an adverse employment action, and the Government does not argue that this particular claim is unexhausted.

**B.  No Identified Comparator**

The Government next maintains that Robinson's discrimination claims fail because she has not identified a comparator outside her protected class who faced no similar adverse treatment.  *See* ECF No. 10-1 at 12.  Accordingly, says the Government, Robinson fails to make out a *prima facie* case of disparate treatment.

The Government places too heavy a burden on Robinson at the pleading stage.  "It has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' . . . to withstand a motion to dismiss."  *Holloway v. State*, No. 20-1958, 2022 WL 1207165, at *3 (4th Cir. Apr. 25, 2022) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)); *see also Woods v. City of Greensboro*, 855 F.3d 639, 651 (4th Cir. 2017) ("The similarly situated analysis typically occurs in the context of establishing a *prima facie* case of discrimination, not at the 12(b)(6) stage.").  Rather, the Complaint must do no more than plead sufficient facts to make plausible that the employer treated her adversely on account of race or gender.

Although the Complaint may be "thin on facts (as opposed to conclusions) suggesting racial motivation," *Holloway*, 2022 WL 1207165, at *4, it does aver that Robinson had received the GS grade reduction without cause and that she was passed over for a hard-earned accretion of duties promotion when other similarly situated white men were not.  ECF No. 11 ¶¶ 35, 47. Robinson also particularly identifies having substituted for a GS-13 for three months, giving rise to the inference that Robinson worked at a level substantially higher than her pre-audit GS-11 scale.  *See id.* ¶¶ 48 & 49.  Last, the Complaint avers that her employers manipulated the desk audit to ensure a reduction in rank when, in fact, Robinson's work would have amply supported an increase in GS scale.  *Id.* ¶¶ 58 & 59.  In short, Robinson has averred sufficient facts to nudge

her disparate treatment claim from the possible to the plausible.  The Government's motion is therefore denied.

### IV.   Title VII – Retaliation (Count III)

Like the disparate treatment claims, the Government urges dismissal of the retaliation claim because no facts make plausible Robinson had suffered an "adverse employment action" following her EEO activity.  For retaliation, the Complaint must make plausible that the plaintiff suffered an adverse employment action as a consequence of her protected EEO activity.  *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011).

The Court has already concluded that Robinson's demotion is sufficiently adverse for the disparate treatment claim, and the same rationale holds here.  *See Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) (unpublished opinion) (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998)).  Further, the temporal proximity of Robinson's demotion on the heels of her formal EEO charge alone is sufficient such that the claim will proceed.  *See Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021).  The motion to dismiss this claim is therefore denied.

### V.   Title VII – Hostile Work Environment

The Government lastly challenges the sufficiency of Robinson's hostile work environment claim.  As the Fourth Circuit has explained, a hostile work environment exists where (1) the plaintiff has encountered unwelcome conduct; (2) the conduct was based on the plaintiff's race or gender; (3) the conduct was severe or pervasive such that it altered the conditions of employment and created an abusive work environment; and (4) liability is imputable to the employer.  *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (citing *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).  The

Government principally concentrates on the claimed employer misconduct, arguing that it was not so severe or pervasive to constitute a hostile or abusive working environment. *See* ECF No. 10-1 at 10–12.[5]  As to this element, the Complaint must make plausible that the complained-of conduct was both objectively and subjectively hostile and abusive. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  In this respect, says the Government, the Complaint facts fall short.  The Court agrees.

Essentially, Robinson relies on the same adverse employment actions for the hostile work environment claim as for the disparate treatment allegation.  She argues that her supervisors' misconduct was characteristic of a "hostile scheme" designed to treat her more harshly than her white male counterparts which "plainly affected" her "core economic relationship" with her employer.  ECF No. 13-1 at 21.  But repackaging the disparate treatment allegation alone does not make plausible that Robinson suffered an atmosphere of "discriminatory intimidation, ridicule and insult" that altered her work conditions. *Parker v. State*, 11 F. Supp. 2d 467, 475 (D. Del. 1998) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986)).  To maintain a hostile work environment claim, a plaintiff must allege more than subtle slights. *Cf. Boyer-Liberto*, 786 F.3d at 269–70, 280–81 (hostile work environment where manager berated, threatened, and called plaintiff a racial epithet); *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167 (4th Cir. 2009) (hostile work environment where plaintiff's co-workers used racial epithets and derogatory words to describe women on a near-daily basis).

---

[5] The Government also contends for the first time in its reply brief that Robinson "did not even assert a hostile work environment count in her Complaint," and that she "should not be permitted to add a claim through briefing." ECF No. 17 at 12.  This argument is borderline frivolous.  Robinson evidently raised the hostile work environment claim in her Complaint because the Government challenged the merits of that claim in its opening memorandum. *Compare* ECF No. 1 ¶¶ 1–3, 25 *with* ECF No. 10-1 at 10–12.  The Government could not have made these initial arguments if the claim had been "added" through Robinson's response.

No doubt, Robinson likely felt as if she had been given the royal runaround by her supervisors.  At best, this supports that she may have subjectively perceived her conditions as unwelcoming, demoralizing, and grossly unfair.  But this does not satisfy any objective standard of severity.  *Cf. Holloway v. State*, No. 20-1958, 2022 WL 1207165, at *4–5 (4th Cir. Apr. 25, 2022) (affirming dismissal of hostile work environment claim where supervisor undermined plaintiff's leadership, yelled at plaintiff during meetings, and required plaintiff to address him as "sir"); *Taylor v. Go-Getters, Inc*, No. ELH-20-3624, 2021 WL 5840956, at *13 (D. Md. Dec. 9, 2021) (collecting cases).  The Complaint simply does not make plausible that Robinson's working conditions were so severe or pervasive as to constitute a hostile work environment.  For this reason alone, the claim fails as a matter of law and must be dismissed.  Further, because the Court cannot discern any way that Robinson could cure this defect, the claim must be dismissed with prejudice.  *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming district court's dismissal with prejudice when "it [was] clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"); *see also Forbes v. Ross*, No. 21-0140-PX, 2021 WL 2895836, at *3 (D. Md. July 9, 2021) (dismissing with prejudice a claim that was "truly unamendable").

**VI.    Conclusion**

To summarize, the Government's motion to dismiss or, in the alternative, for summary judgment is GRANTED in part and DENIED in part.  Specifically, Robinson's claims for discrimination on the basis of race (Count I); discrimination on the basis of gender (Count II); and retaliation (Count III) survive dismissal.  Robinson's hostile work environment claim, however, is DISMISSED with prejudice.

A separate Order follows.


May 9, 2022                                                            /s/
Date                                           Paula Xinis
                                               United States District Judge

14