## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHERRY A. ROBINSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 8:21-cv-02112-PX |
| v. | * | |
| | * | |
| LLOYD J. AUSTIN III, | * | |
| Secretary, | * | |
| Department of Defense, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court in this employment discrimination action is Defendant's motion for summary judgment. ECF No. 60. No hearing is necessary. D. Md. Loc. R. 105.6. The motion is granted for the following reasons.

### I.      Background

Unless otherwise noted, the following facts are undisputed and construed most favorably to Plaintiff Sherry A. Robinson ("Robinson") as the non-moving party. On December 6, 2010, the United States Department of Defense ("the Government") hired Robinson as a Management Analyst at the GS-11 grade level in the Defense Information Systems Agency ("DISA").[1] ECF No. 60-4 at 10, 21. Initially, Robinson had "very little" responsibility, and performed only "two or three" specific tasks as an analyst. *Id.* at 11. On November 15, 2016, however, Robinson was transferred to a new branch and assigned "24 new duties" in the areas of personnel, physical, information, industrial, and operations security. *Id.* at 10.

---

[1] The General Schedule (GS) is a government classification and pay system that establishes job grades based on the level of responsibility, difficulty, and qualifications required. *General Schedule Overview*, U.S. Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/ (last visited Feb. 12, 2024).

Despite taking on these new duties, by early 2019, Robinson had not been promoted within DISA. ECF No. 60-4 at 8–9. She had also applied to several security-related positions at the next grade level, GS-12, without success. *Id.* at 9. Yet around the same time, three white women in DISA received promotions to GS-12. *Id.* at 29. Each successfully applied for open positions that were made available to applicants outside the Government. *Id.* at 30–32. Each woman was also hired as an assistant, not as a Management Analyst like Robinson, so their duties and chains of supervision were different from hers. *Id.* at 29–32 (Q: Do you have the same duties as Miss Carpenter? A: Absolutely not. Q: Your duties are not the same at all? A: Absolutely not. Nowhere near.); *see also* ECF No. 60-11 at 13. Also, around the same time, another male employee was promoted to a GS-12 level position that had been advertised to the public. ECF No. 60-4 at 35–36.

### A.    Desk Audit

On or around February 25, 2019, Robinson emailed her first-level supervisor, Sharon Hopkins ("Hopkins"), to request a desk audit. ECF No. 60-10 at 2, 7, 13. A "desk audit," permits an employee to obtain an "accretion of duties promotion," or "a non-competitive action resulting from an employee's position being classified to a higher grade-level because of additional duties and responsibilities." *Id.* at 6. Hopkins advised Robinson against the desk audit because it could result in a reduction of Robinson's GS level. *Id.* at 7. DISA's Workforce Services and Development Directorate ("WSD") also advised against it, explaining that "as a Program Analyst performing Security Manager duties, she would not grade out higher than a GS-5 or 6." *Id.* at 17.

Paul DeMennato ("DeMennato"), Robinson's second-line supervisor, told Robinson about WSD's admonition. ECF No. 60-10 at 17. To avoid such a result, DeMennato suggested

that Robinson not request the audit until she could be reassigned to a position that better matched her current set of duties, therefore increasing her chances of promotion. *Id.* at 17, 20. Specifically, DeMennato advised Robinson to accept a reassignment to a Security Specialist position before proceeding with the audit. ECF No. 60-3 at 1; *see also* ECF No. 60-10 at 18. But according to DeMennato, it was ultimately "up to [Robinson] whether to pursue that path." ECF No. 60-10 at 20; *see also id.* at 17 (DeMennato testifying that he discussed with Robinson several times "why we were going down this path.").

Robinson initially refused to accept the reassignment because she did not agree that her position description needed to change. ECF No. 60-4 at 40. She maintains that she could have remained in her Management Analyst position and performed the same assignments as someone in the Security Specialist position. *Id.* at 41–43. To Robinson, DeMennato paused the desk audit not to help her, but to prevent her from getting promoted. ECF No. 60-10 at 13.

Robinson eventually accepted the reassignment to a Security Specialist position, but she views it as being a "forced" reassignment. ECF No. 60-4 at 42–43; *see also* 60-5 at 4. Although at the time, DeMennato asked Robinson to "let [him] know if [she had] any concerns with properly being assigned to a Security Managers [Position Description]," ECF No. 60-3 at 1, and Robinson replied, "please do the reassignment," ECF No. 60-3 at 1. Robinson later explained that she viewed "security manager" as "just an internal title" within DISA, and that "everybody" regardless of grade, "is called a security manager." ECF No. 60-4 at 20.

On September 29, 2019, Robinson was officially reassigned to the Security Specialist position. ECF No. 60-10 at 7. According to DISA, her desk audit was subject to a mandatory 90-day waiting period following the reassignment. *Id.*; ECF No. 60-4 at 8. That same month,

Nadine Horton ("Horton"), DISA's human resources classifier, was assigned to complete Robinson's desk audit.  ECF No. 60-10 at 2, 19.

On January 2, 2020, before the desk audit began, Robinson filed a formal Equal Employment Opportunity ("EEO") complaint against DISA.  *See* ECF No. 60-5.  In it, Robinson accused DISA of systematically denying her "promotion to the proper grade level," on account of her race and sex.  *Id.* at 4.  She also asserted that the agency was denying her a desk audit because it would "demonstrate that [she is] severely undergraded."  *Id.*  This was the third EEO complaint that Robinson had filed against DISA.  ECF No. 60-4 at 23–24.

On January 21, 2020, Robinson's desk audit commenced.  ECF No. 60-4 at 8; ECF No. 60-10 at 7.  Robinson first completed a standard desk audit questionnaire in which she described "the duties and responsibilities of her position."  ECF No. 60-10 at 19.  Horton reviewed Robinson's completed questionnaire and determined that it "highly suggested that [Robinson] was in fact completing duties below [her] grade."  *Id.*  Horton discussed this preliminary assessment with management and advised that Robinson not pursue the desk audit.  *Id.*  Horton also told Robinson that once the desk audit decision was finalized, "there is no going back."  *Id.*

Undeterred, Robinson proceeded with the audit.  The next step involved Horton, over two afternoons, observing Robinson and documenting what duties Robinson performed.  ECF No. 60-10 at 26.  Horton also amassed additional information through surveys that Hopkins and Robinson had completed.  *Id.*  Although Robinson had received some negative feedback on older performance evaluations and a dated coworker complaint, nothing in the record suggests that Horton considered any of this information as part of the desk audit.  ECF No. 60-8; ECF No. 60-9; ECF No. 60-10 at 26; ECF No. 60-6.

In Robinson's estimation, she found several aspects of her desk audit to be unusual.  ECF No. 60-4 at 15.  According to Robinson, desk audits are customarily outsourced to another agency, not handled by DISA's human resources department.  *Id.* at 15.  DISA, by contrast, has demonstrated that after 2019, desk audits were placed under Horton's purview.  ECF No. 60-10 at 17–18.  Robinson also takes issue with Horton having conducted an "observational" desk audit.  ECF No. 60-4 at 15.  Horton explains that she did so because the written responses suggested that Robinson could not adequately describe the "duties and responsibilities of her position," and so the observational piece was needed.  ECF No. 60-10 at 19.

At the end of the desk audit, Horton prepared an "official position description" of Robinson's actual duties and responsibilities.  *See* ECF No. 60-6 at 1; *see also* ECF No. 60-7 at 3.  Next, as required by law, Horton compared Robinson's position description with the Office of Civilian Personnel Management ("OPM")'s position classification standards and guidelines.  *See* ECF No. 60-7 at 3; ECF No. 60-6 at 5–10.  Horton also evaluated Robinson's duties by assigning her points for nine factors, which included knowledge required by the position, supervisory control, and complexity of the job duties.  *See id.*

In a twelve-page memorandum issued on May 8, 2020, Horton notified Robinson that based on the results of her desk audit, Robinson's GS level was being downgraded from a Security Specialist at the GS-11 level to a Security Assistant at the GS-08 level.  ECF No. 60-6 at 10; ECF No. 60-10 at 7.  This was based on Horton's total points assessment of 1685 across the nine factors.  ECF No. 60-6 at 10.  Robinson's downgrade became effective on May 10, 2020.  ECF No. 60-10 at 26.

5

**B.    EEO Complaints**

On May 13, 2020, Robinson requested amendment of her January 2, 2020, EEO complaint to consolidate her prior complaints and add a new claim related to her downgrade. ECF No. 60-10 at 2, 13.  DISA accepted the amendment.  *Id.* at 2.  The May 2020 EEO complaint thus alleged that DISA had discriminated against her when DeMennato (1) cancelled her desk audit; (2) forced her to "apply" for the Security Specialist position; (3) required her to assume the duties of another employee without promotion; and (4) as of January 2, 2020, had failed to process her desk audit.  *Id.* at 1–2.  She additionally alleged that DISA ultimately downgraded her to a GS-08 position in retaliation for her January 2, 2020, EEO complaint.  *Id.* Her claims were investigated from March 11 until June 22, 2020.  *Id.* at 2.

On May 21, 2021, DISA issued its Final Agency Decision on the EEO complaint, finding that Robinson "was not subjected to discrimination based on race, sex, or reprisal for prior EEO activity."  ECF No. 60-10 at 30.  That same day, she received her right to sue letter.  *See id.* at 32.

**C.    Desk Audit Appeal**

In parallel with the EEO proceedings, Robinson pursued an appeal of the desk audit decision with the Defense Civilian Personnel Advisory Service ("DCPAS").  ECF No. 60-4 at 14; *see also* ECF No. 60-7.  During that process, Robinson argued that the downgrade was not supportable because the official position description of her actual duties was incomplete in that it omitted many of Robinson's major duties.  ECF No. 60-4 at 14.   DCPAS, in turn, conducted an independent desk audit.

On April 28, 2021, Linda Kazinetz ("Kazinetz"), the Chief of Classification Appeals at DCPAS, performed the audit by telephone.  ECF No. 60-7 at 4.  Robinson and Kazinetz had no

prior interactions before the audit.  ECF No. 60-4 at 15.  As part of her review, Kazinetz relied on the prior documentation supporting the DISA audit, the telephone audit with Robinson, telephone interviews with Robinson's supervisors, a follow-up telephone interview with Robinson, and additional documentation that Robinson provided.  ECF No. 60-7.  Robinson attests that she explained to Kazinetz "from A to Z what I do, how I execute on a daily basis," and that Kazinetz knew the range of Robinson's job duties.  ECF No. 60-4 at 16–17.

On July 14, 2021, in a thirteen-page memorandum, Kazinetz downgraded Robinson further.  *See* ECF No. 60-7.  Kazinetz concluded that Robinson's duties resulted in a GS-07 level.  *Id.* at 1.  As with the initial desk audit decision, Kazinetz had evaluated Robinson's duties by comparing them to OPM's guidelines and standards.  *See id.* at 3.  But Kazinetz credited Robinson with 200 fewer points for the category of "knowledge required by the position." *Compare id.* at 7–12, *with* ECF No. 60-6 at 5–6.  Kazinetz's assessment was otherwise identical to Horton's.  *See id.*

Robinson disputes Kazinetz's decision.  According to Robinson, a Security Assistant "is not supposed to do half of what" she does.  ECF No. 60-4 at 6.  Robinson has since appealed the DCPAS decision to OPM, and that matter is still pending.  *Id.* at 17.

### D.     Procedural History of this Case

While the desk audit appeal was proceeding, Robinson filed suit in this Court, alleging that the entire course of conduct surrounding her downgrade supported claims of race and sex-based discrimination, retaliation, and hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  ECF No. 1.  The Government moved to dismiss the Complaint, or alternatively, for summary judgment in its favor on all counts.  ECF No. 10.  The Court granted the Government's motion only as to

Robinson's hostile work environment claim and further found that the downgrade of Robinson's position classification was the only action sufficiently adverse to support her discrimination claims.  ECF No. 18 at 8, 11–13.  The Government answered the remaining claims in the Complaint, ECF No. 20, and discovery ensued.  Following the close of discovery, the Government moved for summary judgment in its favor on the remaining discrimination and retaliation counts.  ECF No. 60.   Robinson has responded, and the matter is now ready for resolution.

## II.     Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)); *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) ("[The nonmoving party's] self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.").  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  But "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna*

*Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted.  *Celotex*, 477 U.S. at 322.

### III.    Analysis

Robinson proceeds on claims of race and sex discrimination and retaliation.  The Court considers each discrimination theory separately.

### A.    Discrimination Claims (Counts One and Two)

Robinson alleges that the downgrade of her position was the product of race and sex-based discrimination.  *See* ECF No. 1 ¶¶ 63–94.  Title VII prohibits discrimination on account of race or sex.  42 U.S.C. § 2000e-2(a).  In the absence of direct evidence of discriminatory animus, Title VII claims are subject to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004), *overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

To survive summary judgment, the plaintiff must first make a prima facie showing that she belongs to a protected class; that she was performing her job duties satisfactorily at the time that the employer took an adverse action against her; and that the circumstances surrounding such adverse action give rise to an inference of discrimination.  *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010); *see also Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir. 1993) ("The question confronting a judge faced with determining whether a prima facie case under Title VII has been made is whether the record as a whole gives rise to a reasonable

inference of racially discriminatory conduct by the employer."). If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse action. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254–56 (1981). If the employer does so, the burden shifts back to the plaintiff to demonstrate that the stated reasons are mere pretext for discrimination. *Id.*

The Government principally argues that Robinson has not established a prima facie case for race or sex-based discrimination because she has not identified appropriate comparator evidence.[2] ECF No. 60-1 at 11. One way a plaintiff may demonstrate adverse treatment on account of race or sex is to demonstrate that other employees "from a non-protected class" received more favorable treatment under similarly situated circumstances. *Witherspoon v. Brennan*, 449 F. Supp. 3d 491, 500 (D. Md. 2020). But when proceeding by such proof, the plaintiff "must demonstrate that the comparator was similarly situated in all relevant respects." *Johnson v. Baltimore City Police Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (internal citations and quotation marks omitted).

Although Robinson points to three white women who were promoted to the GS-12 level, the Government argues that none are adequate comparators because, as executive assistants, they did not share the same duties or supervisors with Robinson, and their placements were not the result of desk audits. ECF No. 60-1 at 12. Similarly, the Government argues that Charles, the

---

[2] The Government also argues that Robinson's downgrade was not sufficiently adverse because her salary was never reduced, and she was offered other positions at the GS-11 level. ECF No. 60-1 at 17–18. But as explained by the Court in its prior Opinion, Robinson's downgrade to a lower GS-level clearly affected her opportunities for promotion, so it was sufficiently adverse. *See* ECF No. 18 at 9; *see also* ECF No. 60-4 at 50 (Robinson testifying that the downgrade has hurt her promotional prospects and financial earning potential). The Government further argues that Robinson's downgrade is not an adverse employment action because, due to her pending appeal with OPM, it is not final. ECF No. 60-1 at 18–19. While it is true that "for a personnel action to be an adverse employment action, the action must be final," *Lurie v. Meserve*, 214 F. Supp. 2d 546, 550 (D. Md. 2002), the initial desk audit was DISA's final decision on the matter, so her downgrade was a final adverse employment action. *See* ECF No. 60-6 at 1.

man Robinson identified as having been promoted to GS-12, is also not an adequate comparator because, like the three white women, he obtained his promotion by applying to a competitive job posting, not through a desk audit. *Id.* at 14–15.

In response, Robinson does not argue that she has identified adequate comparators. Instead, Robinson points out that comparators are not essential to a successful discrimination claim. ECF No. 63-1 at 20. Robinson is correct, "so long as she can establish an inference of unlawful discrimination through other means." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017), *as amended* (Aug. 11, 2017). On that score, Robinson argues that a reasonable juror could infer race and sex-based animus from DeMennato's reassignment of Robinson to a Security Specialist position. ECF No. 63-1 at 15–16. She contends that this reassignment was a "bait and switch" devised by DeMennato to demote her to a lower position and ruin her chances of promotion. *Id.* at 24. As evidence of the bait and switch, Robinson contends that DeMennato said "he was transferring her to a security manager position," but then assigned her to a Security Specialist position. *Id.* at 15–16.

But Robinson does not explain why the reassignment to the Security Specialist position was sufficiently adverse and thus gives rise to an inference of discrimination. Both the Security Specialist position and Robinson's previous Management Analyst position are GS-11 classifications. *See* ECF No. 60-4 at 17. And Robinson agrees that "security manager" is "just an internal title" used to describe everyone on the security team, regardless of grade level. *Id.* at 20–21. Nor is there any evidence that DeMennato specifically chose the title of "security manager" on account of Robinson's race or sex. This Court thus finds that a reasonable juror could not infer discrimination based on Robinson's reassignment to the Security Specialist

11

position alone.  Accordingly, Robinson has adduced no evidence to make out a prima facie case of race or sex discrimination and so the claim fails.

That said, the Court recognizes that the prima facie burden is "not onerous." *Burdine*, 450 U.S. at 253.  Yet even if the Court grants Robinson the benefit of the doubt on the prima facie case, no evidence supports that the downgrade decision was pretextual.  *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

The evidence viewed most favorably to Robinson reflects that DISA legitimately downgraded Robinson because her actual job duties and acumen warranted the downgrade under the OPM guidelines.  ECF No. 60-1 at 19.  Indeed, DISA and DCPAS concluded as much, and Robinson offers no real evidence in rebuttal.  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).  Moreover, nothing supports the inference that the downgrade amounted to pretext for race or sex discrimination.  Robinson suggests that, by discussing her negative performance evaluations and employee complaint in its motion, the Government has offered a "shifting narrative" on why Robinson was demoted.  ECF No. 63-1 at 18; *see* ECF No. 60-1 at 6–7; ECF No. 60-8; ECF No. 60-9.  Robinson is correct that discrimination may be inferred from shifting or inapposite explanations for an adverse action.  *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 576 (4th Cir. 2015) (quoting *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)) ("The fact that an employer 'has offered different justifications at different times for [an adverse employment action] is, in and of itself, probative of pretext.'").  But nothing in the two desk audits suggests that either decision-maker considered this historic derogatory information.  *See* ECF Nos. 60-6 & 60-7.  Instead, the record indisputably reflects that DISA's reason for the downgrade remained consistent and focused on the comparison of Robinson's job duties to the OPM guidelines.

In short, no evidence supports that the desk audit considered Robinson's prior evaluations or the employee complaint.  *See* ECF Nos. 60-6 & 60-7; *see also* ECF No. 65 at 10 n.8. Accordingly, because Robinson has adduced no evidence to create a genuine dispute as to pretext, summary judgment is granted in the Government's favor on the discrimination claims.

### B.       Retaliation Claim (Count Three)

Turning to the retaliation claim, Robinson contends that her GS-level downgrade was in retaliation for her having filed an EEO complaint.  ECF No. 1 ¶¶ 95–111.  Title VII prohibits an employer from retaliating against an employee who avails herself of the protections afforded under Title VII, to include the filing of an EEO complaint.  42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–67 (2006).  Absent direct evidence of retaliatory animus, the plaintiff must make a prima facie showing that she engaged in activity protected under Title VII; that the employer took adverse action against her; and that a causal connection exists between the two.  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021); *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018).

"A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes."  *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783–84 (4th Cir. 2021).  First, she "may establish that the adverse act bears sufficient temporal proximity to the protected activity."  *Id.* at 784.  Or second, she "may establish the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity."  *Id.*  If the plaintiff satisfies this relatively minimal burden of the prima facie case, then the employer must articulate a legitimate, non-retaliatory reason for the adverse action, after which the burden then shifts back to the employee to demonstrate that the purportedly legitimate explanation was mere cover for retaliation.  *Roberts*,

998 F.3d at 122 (citing *Foster v. Univ. of Md.—Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015)).

The Government argues that because four months separate Robinson's January 2020 EEO complaint from DISA's downgrade decision, no reasonable juror could infer that she had been downgraded on account of her complaint.  ECF No. 60-1 at 15.  Temporal proximity, however, is measured not from the filing of the EEO complaint, but from the time when the individual who took the adverse action learned of the protected activity.  *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989); *see also Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  And here, Horton became aware of Robinson's protected activity on April 9, 2020, less than a month before she issued the adverse audit results on May 8.  ECF No. 60-10 at 26.  Thus, when considering that there is "no bright-line rule for temporal proximity," *Roberts*, 998 F.3d at 127, an intervening month is sufficiently proximate to make out the prima facie case, *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal citation and quotation marks omitted); s*ee also Foster*, 787 F.3d at 253 (finding that a one-month lapse "tends to show causation").

Nonetheless, the retaliation claim fails as to pretext.  As with the discrimination claims, if the plaintiff makes a prima facie showing of retaliation, the burden then shifts to the defendant "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason."  *Strothers*, 895 at 328 (quoting *Foster*, 787 F.3d at 250).  "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Burdine*, 450 U.S. at 255, and the burden shifts back to the plaintiff to raise a genuine issue of

material fact as to whether the defendant's proffered reason is a mere pretext for retaliation, *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).

Again, Robinson has not adduced any evidence that Horton's desk audit was a pretext for retaliation.  Horton's audit results were measurable, consistent, and in fact, more favorable to Robinson than the independent audit that DCPAS subsequently performed.  *Compare* ECF No. 60-6, *with* ECF No. 60-7.  Although Robinson takes issue with Horton's failure to consider Robinson's input, ECF No. 60-4 at 14, she cannot make the same claim about the DCPAS evaluation, *id.* at 16–17.  From this, no reasonable juror could conclude that the downgrade decisions were retaliatory.

## IV.    Conclusion

For the foregoing reasons, the Government's motion for summary judgment is granted. A separate Order follows.


February 22, 2024                                                                        /s/
Date                                                                          Paula Xinis
                                                                              United States District Judge